**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
YVONNE CHUI, on behalf of herself and all
other persons similarly situated,

                              Plaintiff,                              **MEMORANDUM**
                                                                     **AND ORDER**

                - against -                              CV 18-5091 (SJF) (AKT)

AMERICAN YUEXIANGGUI OF LI LLC
d/b/a Lou Joe Restaurant and
XING MEI CHEN
                              Defendants.
-----------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      <u>**PRELIMINARY STATEMENT**</u>

        Plaintiff Yvonne Chui ("Plaintiff") commenced this putative collective and class action

on behalf of herself and others similarly situated against corporate Defendant American

Yuexianggui of LI LLC d/b/a Lou Joe Restaurant ("Lou Joe Restaurant") and individual

Defendant Xing Mei Chen ("Chen") (collectively, "Defendants") for violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the New York Labor Law ("NYLL").

*See generally* Plaintiff's Amended Complaint ("Am. Compl.") [DE 16].  Plaintiff seeks to

recover, among other things, for Defendants' alleged failure to pay overtime wages and to

provide mandated wage notices and wage statements.  *See id.*

        Plaintiff now moves for conditional certification as a collective action and for permission

to disseminate court-authorized notice, pursuant to Section 216(b) of the FLSA.  *See generally*

Plaintiff's Memorandum of Law in Support of its Motion for Conditional Certification ("Pl.'s

Mem.") [DE 20].  Defendants oppose Plaintiff's motion arguing that Plaintiff has failed to make

the modest factual showing required for conditional certification.  *See generally* Defendants'

Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification ("Defs.' Opp'n") [DE 22].

For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.[1]

## II.   BACKGROUND

### A.   Factual Background

#### 1.   *The Amended Complaint*

The following facts are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this motion.  Defendants own and operate the Lou Joe Restaurant located at 255 Willis Avenue, Roslyn Heights, New York.  *See* Am. Compl. [DE 16] ¶¶ 8-11.  Defendant American Yuexianggui of LI LLC is a New York corporation which does business as Lou Joe Restaurant.  *Id*. ¶ 8.  Defendant Chen was responsible for hiring and firing employees, supervising and controlling employee work schedules, determining rates and methods of pay, etc. *Id*. ¶ 12.  According to Plaintiff, Defendant Chen was known as "Boss."  *Id*.

Plaintiff worked as a cashier for Defendants from approximately October 19, 2017 to July 16, 2018.  *Id.* ¶¶ 7, 32.  Using a timeclock, Plaintiff punched in and out for the first two weeks of her employment but was then advised not to punch in or out.  *Id.* ¶¶ 30-31.  From October 19 to December 31, 2017, Plaintiff worked five days per week for a total of approximately 54.5 hours each week.  *Id.* ¶ 33.  From January 1, 2018 to June 30, 2018, Plaintiff worked five days per week for a total of approximately 57 hours.  *Id*. ¶ 34.  From July 1, 2018 to

---

[1]      This Court has the authority to grant or deny conditional certification in the first instance "because such a determination is a non-dispositive matter."  *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 5444944, at *1 (E.D.N.Y. Sept. 15, 2015) (quoting *McEarchen v. Urban Outfitters, Inc.*, No. 13-CV-3569, 2014 WL 4701164, at *1 n.1 (E.D.N.Y. Sept. 23, 2014)).

July 16, 2018, Plaintiff worked five days per week for a total of approximately 58.5 hours.  *Id.* ¶ 35.  The Amended Complaint asserts that Plaintiff did not have a fixed time for meals during her working hours.  *Id*. ¶ 36.  She had 15 minutes to eat meals and, on several occasions, during her meal, she would be "on call" requiring her to stop eating and return to work.  *Id.* ¶ 37.

During her employment, Plaintiff was paid a fixed rate of $723 dollars per week.  *Id.* ¶ 38.  She received a check for $300 and was paid the remaining $423 in cash.  *Id*.  Plaintiff received an additional $200 in her last month of employment for other duties and obligations she took on.  *Id.* ¶ 39.  According to Plaintiff, Defendants failed to pay her one-and-one half times her regular rate of pay for hours worked in excess of 40 in a given work week and failed to pay her for a number of days she worked in June of 2018, in violation of the FLSA.  *Id.* ¶¶ 40-41, 43. Plaintiff further alleges that Defendants, in violation of the NYLL:  (1) failed to keep full and accurate records of Plaintiff's hours and wages in order to mitigate liability for their wage violations; (2) knowingly and willfully failed to provide Plaintiff and other similarly situated employees with a "Time of Hire Notice" as well as paystubs reflecting, among other things, true rates of pay; (3) failed to pay Plaintiff spread-of-hours premium; and (4) failed to post required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and paydays.  *Id.* ¶¶ 24-28, 42, 44.

### 2.    *Plaintiff's Declaration in Support of the Instant Motion*

In support of her motion for conditional certification, Plaintiff has submitted her own affidavit in which she attests to certain facts relevant to the instant motion.  *See* Affidavit of Plaintiff Yvonne Chiu in Support of Plaintiff's Motion for Conditional Certification ("Pl.'s Aff.") [DE 19-5].  In her Affidavit, Plaintiff repeats many of the same facts pleaded in the Amended Complaint regarding her own employment.  However, she also identifies four (4)

employees who worked for Defendants and purportedly did not receive overtime pay. *See generally* Pl.'s Aff. [DE 19-5]. According to Plaintiff, at all relevant times, Defendants employed 13 or 14 individuals, some of whom were subject to the same policy and practice of Defendants not paying overtime. *See id.* ¶¶ 21-22. The employees mentioned include waitresses Tiffany, Coco, and Ivonne, *see id.* at 23, 29, 35, and Andy, a sushi chef, *see id.* ¶ 41. Plaintiff asserts that she "befriended" these coworkers during her employment and possesses knowledge about their "salary information through chatting with [them] at the restaurant." *See id.* ¶¶ 28, 34, 40, 44.

As it relates to the three waitresses, Tiffany, Coco, and Ivonne, Plaintiff states she spoke with them at the restaurant in January 2018 during which time they indicated that they worked six days per week on the same schedule as Plaintiff -- the only difference was that they took a different day off and worked an additional day. *See id.* ¶¶ 24, 30, 36, 42. It is unclear what the waitresses' hours were for the extra day they worked when Plaintiff did not. However, since Plaintiff worked 57 hours per week in January of 2018 -- and the waitresses otherwise worked the same hours as Plaintiff during that time -- the Court credits the assertion, as it must at this juncture, that the waitresses worked a minimum of 57 hours per week. *See id.* ¶¶ 6, 24, 30, 36, 42.[2]

---

[2]    Plaintiff also states that, "[l]ike me [the waitresses and sushi chef] would work extra half (0.5) hours for about three (3) days and one-and-one half (1.5) hours a week but [were] never paid overtime." *Id.* ¶¶ 25, 31, 37, 43. The Court points out that Plaintiff does not explain whether these "extra" 1.5 hours worked were in addition to the sushi chef and waitresses' normal hours or were included in their normal schedule and were accounted for in their salary. The Court also notes that at no point does Plaintiff state she worked an additional 0.5 hour for three days in addition to her normal hours. Due to the vagueness of these allegations the Court cannot infer that the waitresses, sushi chef, or Plaintiff worked any more hours than those set forth in Plaintiff's Affidavit.

Plaintiff further states that the waitresses were promised a fixed salary of $3,500 but instead received a salary of $3,000 to $3,200 per month. *Id.* ¶¶ 26, 32, 38.  It is unclear at what frequency these waitresses were paid and whether their salaries varied every month between $3,000 to $3,200 or were a fixed amount within that range.  Although the waitresses were permitted to keep cash tips, Defendants allegedly failed to notify them of the tips they received through such credit card payments and instead advised the waitresses that their salary included tips received through credit cards payments.  *Id.* ¶¶ 27, 33, 39.  Since a portion of the waitresses' salaries included tips made on credit card purchases, Plaintiff claims that the waitresses' base salary was effectively reduced from the amount stated.  *Id.*

As to the sushi chef, Plaintiff states that she spoke with him in either February or March of 2018 at which time he indicated that he worked between six and seven days per week on the same schedule as Plaintiff -- the only difference was that he took a different day off and worked an additional day to day and a half.  *Id.* ¶ 42.  It is unclear what the sushi chef's precise hours were for the extra day or two he worked when Plaintiff did not.  However, since Plaintiff worked 57 hours per week in February and March of 2018 -- and the sushi chef otherwise worked the same hours as Plaintiff during that time -- the Court concludes that the sushi chef worked a minimum of 57 hours per week.  *See id.* ¶¶ 6, 42.  The sushi chef was paid $750 to $800 per week, *id.* at 44, which amounts to $3,000 to $3,200 per month.  *Id.* ¶ 44.  Again, it is unclear whether the sushi chef's salary varied every month between $3,000 to $3,200 or was a fixed amount within that range.

Plaintiff further states that "[a]ll restaurant employees were paid a fixed salary irrespective of the number of hours worked per week," *id.* ¶ 46, and that "Defendants never provided its employees with a [wage statement]…in Chinese," her native language, *id.* ¶ 18.

### B.     Relevant Procedural Background

Based on the foregoing allegations, Plaintiff commenced this action on September 10, 2018.  *See* Complaint [DE 1].  Plaintiff signed a consent to become a party in a collective action that same day.  *See id*.  Defendants filed their Answer on November 2, 2018.  *See* Answer [DE 10].  Judge Feuerstein referred this case to mediation on December 6, 2018.  *See* Order dated Dec. 6, 2018 [DE 11].  When mediation proved unsuccessful, the parties proceeded with discovery.  *See* Electronic Order dated May 28, 2019.  Discovery is currently ongoing.[3]  On June 19, 2019, Plaintiff filed an Amended Complaint without seeking leave to do so by the Court.  *See* Am. Compl. [DE 16].  Without objecting to the Amended Complaint, Defendants filed their Answer to the Amended Complaint on June 26, 2019.  *See* Amended Answer ("Am. Ans.") [DE 17].[4]

On July 3, 2019, Plaintiff filed the instant motion for conditional certification of an FLSA collective action.  *See* Plaintiff's Notice of Motion for Conditional Certification ("Pl.'s Mot.") [DE 18]; Pl.'s Mem., [DE 20]; Plaintiff's Proposed Notice of Pendency of Collective Action and Consent to Join Form ("Notice of Pendency" or "Notice") [DE 19-3]; Plaintiff's Proposed Publication Order ("Publication Order") [DE 19-4].  In support of the motion, Plaintiff relies on her own Affidavit.  *See* Pl.'s Aff. [DE 19-5].  Defendants oppose conditional certification and object to portions of the Notice of Pendency and Publication Order.  *See generally* Defs.' Opp'n

---

[3]     On November 13, 2019 the Court extended the discovery deadline to January 31, 2020.  *See* Electronic Order dated Nov. 13, 2019.

[4]     Plaintiff did not request and the Court did not grant Plaintiff leave to file an Amended Complaint.  The filing was well beyond the 21 days permitted to amend as of right pursuant to Fed. R. Civ. P. 15.  Defendants did not object to the filing of the Amended Complaint and, in fact, filed their Answer to the Amended Complaint on June 26, 2019, thereby giving implied consent.  Therefore, the Amended Complaint is the operative pleading in this action.

[DE 22].  Defendants argue that Plaintiff failed to make a factual showing that the proposed

members of the collective are similarly situated to her, that no violation of the FLSA occurred,

and that the collective which Plaintiff seeks is too broad.  *See id*.  In support of its opposition,

Defendants rely on the Affidavit of Bingchen Li, Esq. -- counsel for Defendants -- which

attaches webpages from the internet listing Defendants' hours of operation.  *See* Affidavit of

Bingchen Li in Opposition to Plaintiff's Motion for Conditional Certification ("Li Aff.")

[DE 21].

## III.   APPLICABLE LAW

### A.   Legal Standard for Conditional Certification

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section
> 207 of this title shall be liable to the employee or employees affected
> in the amount of their unpaid minimum wages, or their unpaid
> overtime compensation, as the case may be, and in an additional
> equal amount as liquidated damages. . . . An action to recover . . .
> may be maintained against any employer (including a public
> agency) in any Federal or State court of competent jurisdiction by
> any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.  No employee
> shall be a party plaintiff to any such action unless he gives his
> consent in writing to become such a party and such consent is filed
> in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to

recover overtime compensation and/or minimum wages.  *Id*.; *Cabrera v. Stephens*, No. 16-CV-

3234, 2017 WL 4326511, at *4 (E.D.N.Y. Sept. 28, 2017) (citing *Bifulco v. Mortg. Zone*, *Inc*.,

262 F.R.D. 209, 212 (E.D.N.Y. 2009)) ("The FLSA provides a private right of action to recover

unpaid overtime compensation and/or minimum wages."); *Moore v. Eagle Sanitation, Inc.*, 276

F.R.D. 54, 57 (E.D.N.Y. 2011) (citing 29 U.S.C. § 216(b)); *Gjurovich v. Emmanuel's*

*Marketplace, Inc*., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003) (quoting *Hoffmann v. Sbarro, Inc*.,

982 F. Supp. 249, 260 (S.D.N.Y. 1997)).  "Although the FLSA does not contain a class

certification requirement, such orders are often referred to in terms of 'certifying a class.'"

*Bifulco*, 262 F.R.D. at 212 (quoting *Parks v. Dick's Sporting Goods, Inc*., No. 05 Civ. 6590, 2007

WL 913927, at *3 (W.D.N.Y. Mar. 23, 2007)).

      Courts within the Second Circuit apply a two-step analysis to determine whether an

action should be certified as an FLSA collective action.  *See Myers v. Hertz Corp.*, 624 F.3d 537,

544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a

two-step method" for analyzing collective action certification).  First, the court determines

whether the proposed collective members are "similarly situated."  *Puglisi v. TD Bank, N.A*., 998

F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (quoting *Kalloo v. Unlimited Mech. Co. of NY, Inc*., 908 F.

Supp. 2d 344, 346 (E.D.N.Y. 2012)); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438,

442 (S.D.N.Y. 2012) (quoting *Myers*, 624 F.3d at 555).  If the court decides in the affirmative,

then the proposed collective members must consent in writing to be bound by the result of the

suit, or "opt-in."  *McGlone,* 867 F. Supp. 2d at 442 (citing *Cunningham v. Elec. Data Sys. Corp*,

754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)); *see* 29 U.S.C. § 216(b).  The second step, which

typically occurs after the completion of discovery, requires the court to make factual findings

whether the class members are actually similarly situated.  *Rosario v. Valentine Ave. Discount

Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) (quoting *Lynch v. United Servs. Auto.

Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)); *Sharma v. Burberry Ltd*., 52 F. Supp.3d 443,

451 (E.D.N.Y. 2014); *Thornburn v. Door Pro America*, CV 16-3839, 2018 WL 1413455, at *5

(E.D.N.Y. Mar. 20, 2018).  "At that juncture, the court examines the evidentiary record to

determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff."

*Bifulco*, 262 F.R.D. at 212 (quoting *Hens v. ClientLogic Operating Corp.*, No. 05-381S, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006)).

      The instant motion concerns only the first step – whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted.  At this stage, "the evidentiary standard is lenient," *Bifulco*, 262 F.R.D. at 212 (quoting *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. Aug. 8, 2008)), and plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261); *see, e.g.*, *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008); *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb 3, 2009).  "[T]he key question for the similarly situated inquiry is not whether plaintiff's job duties are identical to other potential opt-in plaintiffs, but rather, whether the proposed plaintiffs are similarly situated ... with respect to their allegations that the law has been violated." *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 656 (S.D.N.Y. 2017) (internal quotations and citations omitted).  Therefore, when "plaintiffs attest that they regularly worked in excess of [ ] 40 hours per week and worked evenings, early mornings, and weekends without being properly paid.... [s]uch attestations ... are sufficient for the purposes of [conditional certification]." *Bifulco*, 262 F.R.D. at 214 (internal citation omitted); *Agonath v. Interstate Home Loans Ctr., Inc.*, 17-CV-5267, 2019 WL 1060627, at *2 (E.D.N.Y. Mar. 6, 2019).  "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin*

*First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).  Moreover, courts have

repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less

stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23,

and "that a party seeking to maintain a collective action need not meet the requirements of Rule

23 for class certification." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001)

(collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014)

(citing *Puglisi*, 998 F. Supp. 2d at 98–99, at *2; Fed. R. Civ. P. 23) (stating that a collective

action under the FLSA "is different than a typical class action under the Federal Rules of Civil

Procedure, the strict requirements of which – numerosity, commonality, typicality, and adequate

representation – do not apply to a collective action").

 At the initial certification stage, courts do not require proof of an actual FLSA violation,

but rather require the existence of a "'factual nexus' [ ] between the plaintiff's situation and the

situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362

(E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at

*1 (E.D.N.Y. Aug. 22, 2006)); *see Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491,

2015 WL 4603117, at *6 (E.D.N.Y. 2015); *see also Calderon v. King Umberto, Inc.*, 892 F.

Supp. 2d 456, 459 (E.D.N.Y. 2012) (citing *Jackson v. N.Y. Telephone Co.*, 163 F.R.D. 429, 431

(S.D.N.Y. 1995)).  This determination is typically based on the pleadings, affidavits, and

declarations submitted by the plaintiff or plaintiffs.  *See generally Fa Ting Wang*, 2015 WL

4603117, at *5-6 (citing *Kalloo v. Unlimited Mech. Co. of N.Y., Inc.*, 908 F. Supp. 2d 344, 346

(E.D.N.Y. 2012), *Brabham v. Mega Tempering & Glass Corp.*, No. 13 Civ. 54, 2013 WL

3357722, at *3 (E.D.N.Y. July 3, 2013)); *see also Robles v. Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5 (E.D.N.Y. Dec. 18, 2013) (citing the same).

"Although plaintiff's 'burden of proof is low, it is not non-existent — certification is not automatic.'" *Elamrani v. Henry Limousine, Ltd.*, No. CV 15-CV-2050, 2016 WL 5477590, at *4 (E.D.N.Y. Sept. 28, 2016) (quoting *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264, 2014 WL 465542, at *1 (S.D.N.Y. 2014)).  As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (quoting Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure: Civil 3d § 1807, at 487-53 (2005)) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

The standard of proof, however, should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553 (quoting the same).  With this in mind, courts have found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify" a collective. *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see Ella Shillingford v. Astra Home Care, Inc. d/b/a True Care Home Healthcare*, No. 16-CV-6785, 2018 WL 1033243, at *3 (S.D.N.Y. Feb. 23, 2018) ("Accordingly, an FLSA collective action may be conditionally certified upon even a single plaintiff's

affidavit.") (citation omitted); *see also Cabrera v. Stephens*, No. 16-CV-3234, 2017 WL 4326511, at *5 (E.D.N.Y. Sept. 28, 2017) ("Conditional certification is regularly granted based upon a complaint and one or two affidavits that collectively demonstrate the requisite nexus.") (citation omitted); *see also Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the affidavit of one named plaintiff "met the minimal burden at this preliminary stage of demonstrating that [the plaintiffs] were subject to a common policy or practice and were 'similarly situated' to one another and to potential opt-in plaintiffs").

## IV.   DISCUSSION

### A.   Conditional Certification

Plaintiff seeks the conditional certification of "all current and former non-exempt and non-managerial employees employed at any time from September 10, 2015 to the present by Defendants."[5]  *See* Notice of Pendency [DE 19-3] at 1; *see also* Publication Order [DE 19-4 at 2] at 2.  Plaintiff contends that potential members of the collective are similarly situated because they were all subjected to Defendants' "common policy of understating and underpaying their employees overtime payment, and willfully paying less than minimum wages as required by the FLSA."  *See* Pl.'s Mem. [DE 20] at 5, 15.  Having reviewed the Plaintiff's Affidavit and Amended Complaint, the Court finds that it is appropriate to grant conditional certification of a

---

[5]     The scope of the proposed collective in the instant motion differs from the proposed collective in Plaintiff's Amended Complaint which includes "[a]ll other and former non-exempt employees who have been or were employed by Defendants from the first day Defendant began employing people on or about July 2017, through entry of judgment in this case…and whom [sic] were not compensated at their promised hourly rate for all hours worked and at one and one half time their promised worked for all hours worked in excess of forty (40) hours per week." Am. Compl. [DE 16] ¶ 45.  The Court will evaluate the proposed potential collective as presented in the instant motion.

collective here, but not to permit a collective as broad as Plaintiff requests.[6]   While Plaintiff has made the requisite "modest factual showing" that cashiers, waiters/waitresses, and sushi chefs are similarly situated "victims of a common policy or plan that violated the law" to support conditional certification of such a collective, Plaintiff has not made such a showing with respect to "all non-exempt and non-managerial employees."

Plaintiff's Affidavit states that she worked as a cashier for Defendants between October 2017 and July 2018.  *See* Pl.'s Aff. [DE 19-5] ¶ 33.  During that time, Plaintiff avers that she consistently worked more than 40 hours per week and was paid a fixed salary of $723 that did not properly compensate her for overtime hours.  *See id*. ¶¶5-7, 10, 16.  These facts sufficiently allege that Plaintiff was subject to a policy or plan which violated the FLSA.  Further, based on this information, the Court "may infer" that other cashiers "worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA."  *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.,* No. 17-CV-7066 2019 WL 699179, at *8 (S.D.N.Y. Feb. 5, 2019) (collecting cases); *see also Cheng Xia Wang v. Shun Lee Palace Restaurant, Inc.*, No. 17-CV-0840, 2018 WL 3155835, at *4 (S.D.N.Y. June 28, 2018) (finding that certification was proper for all delivery persons based on the experience of the named plaintiffs, who were themselves delivery persons).

---

[6]   The Court further finds that Plaintiff has not made a "modest factual showing" that she and potential collective "were victims of a common policy or plan" to pay less than minimum wage.  Plaintiff's Affidavit and Amended Complaint are devoid of any factual allegations regarding Defendants' failure to pay Plaintiff or the proposed collective less than minimum wage.  Indeed, Plaintiff's Affidavit demonstrates the opposite.  Although it is not the focus of the Court's inquiry at this stage, based on Plaintiff's weekly salary ($723) and hours she alleges she worked (54.5 to 58.5), the Court must conclude that Plaintiff's hourly wage exceeded the minimum wage at all relevant times.  While Plaintiff's burden is low, it "is not non-existent and the factual showing, even if modest, must still be based on some substance."  *Elamrani*, 2016 WL 5477590, at *4 (quoting *Sanchez,* 2014 WL 465542, at *1).

Plaintiff's Affidavit also sufficiently alleges that waitresses/waiters and sushi chefs were similarly situated to Plaintiff with respect to the same FLSA violation.  The factual nexus between Plaintiff's situation and that of the putative collective is the heart of the Court's analysis when determining whether to conditionally certify a collective action.  *See Sobczak,* 540 F. Supp. 2d at 362 (A named plaintiff is not required to show "an actual FLSA violation" at this stage, but rather only that "a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs.") (quoting *Wraga,* 2006 WL 2443554, at *1); *see also Fa Ting Wang*, 2015 WL 4603117, at *6.  Specifically, Plaintiff identifies three waitresses and one sushi chef with whom she had conversations who were not properly paid overtime.  *See* Pl.'s Aff. ¶ 23, 29, 35, 41.  When plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved.  *See, e.g., Benavides v. Serenity Spa NY Inc.,* 166 F. Supp. 3d 474, 481–82 (S.D.N.Y. 2016); *Sanchez*, 2014 WL 465542, at *2 ("Where or when these observations or conversations occurred ... is critical in order for the Court to determine the appropriate scope of the proposed class and notice process…"); *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (denying conditional collective action certification where plaintiffs made "only general allegations ... fail[ed] to provide any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations," did not "identify the job titles or duties performed by their fellow employees" and "did not specify to which location their observations pertained' ").

Here, Plaintiff provides the requisite factual detail regarding her conversations in support of conditional certification, including the first names of the waitresses and sushi chef and the

general time and location of the conversations Plaintiff had with them.  *See* Pl.'s Aff. ¶¶ 23,

28-29, 34-35, 40-41; *see also Mendoza v. Little Luke, Inc.,* No. 14-CV-3416, 2015 WL 5918580,

at *7 (E.D.N.Y. Oct. 9, 2015) ("the fact that identification of potential class members [is] only

[by] first name is not fatal to the motion.") (citation omitted).  Based on these conversations,

Plaintiff learned that the waitresses and sushi chef also worked over 40 hours per week, received

either a fixed salary or a salary within a fixed range irrespective of the tips received or hours

worked, and were not paid overtime wages.  *See id*. 24-26, 28, 30-32, 34, 36-8, 40, 42-44.  The

Court finds that these factual allegations are sufficient to establish a factual nexus between

Plaintiff's situation and that of the waitresses/waiters and sushi chefs such that they are similarly

situated "victims of a common policy or plan that violated the law." *See Neris v. R.J.D. Constr.,*

*Inc.,* No. 18-CV-1701, 2019 WL 1458239, at *5 (E.D.N.Y. Mar. 29, 2019) (granting conditional

certification based on plaintiff's affidavit alleging failure to pay overtime for hours worked in

excess of 40 where plaintiff stated that he was aware, based on personal conversations and

observations, of other employees who were similarly situated); *see also Wraga*, 2006 WL

2443554, at *2 (granting motion to certify collective action based on single plaintiff's affidavit

alleging failure to pay overtime where he stated that he was aware, based upon personal

conversations, of approximately 18 other employees who were subject to the same policies); *see*

*also Gjurovich,* 282 F. Supp. 2d at 96 (granting conditional certification where plaintiff's

declaration "identified by name a number of current or former ... employees who held the same

or similar positions as the Plaintiff ... who, like Plaintiff, were paid a fixed weekly salary, and

may not have received overtime compensation if he or she worked in excess of forty hours each

week").

Plaintiff, however, seeks conditional certification of a broader collective that includes "all non-exempt and non-managerial employees" of Defendants.  *See* Notice of Pendency [DE 19-3] at 1; *see also* Publication Order [DE 19-4] at 2.  In support of such a broad collective, Plaintiff's sole allegation is that, "[a]ll the restaurant employees were paid a fixed salary irrespective of the number of hours worked per week."  *See* Pl.'s Aff. ¶ 46.  This allegation is unsupported by any factual details in either Plaintiff's Amended Complaint or her Affidavit.  *See generally* Am. Compl.; *see generally* Pl.'s Aff.  Such a vague and conclusory allegation is insufficient to support conditional certification of the proposed collective.  *See Benavides*, 166 F. Supp. 3d 474, 481–82 (S.D.N.Y. 2016) ("Conclusory allegations are not sufficient to support a motion for conditional collective action certification."); *see also Sanchez,* 2014 WL 465542, at *1 (denying conditional certification where plaintiff provided only "generalized allegations" without "any detail as to a single such observation or conversation"); *see also Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y Dec. 7, 2012) ("mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made.").

Although plaintiff's "burden of proof [at the conditional certification stage] is low, it is not non-existent," and "certification is not automatic."  *Elamrani*, 2016 WL 5477590, at *4 (internal quotations omitted).  "Courts in this Circuit commonly authorize[] the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees."  *Valerio v. R.N.C. Indus., LLC*, 314 F.R.D. 61, 71 (E.D.N.Y. 2016) (citation omitted).  This may include the names of similarly situated employees, their job titles, duties, and the hours they worked.  *See Benavides,* 166 F. Supp. 3d at 481–82 (citations omitted).  In the instant case, Plaintiff has not provided any such probative information in support of the broad collective she seeks.  In the absence of more, Plaintiff has not satisfied her burden that she and

"all non-exempt and non-managerial employees" were similarly situated victims of an unlawful policy or plan.

In opposition to conditional certification, Defendants argue that Plaintiff is not similarly situated to the waiters/waitresses and sushi chefs because Plaintiff worked a different schedule and total number of hours from them and received a fixed salary as opposed to a fluctuating salary. *See* Defs.' Opp'n [DE 22] at 7-8. However, "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certifications." *Rosario*, 828 F. Supp. 2d at 514 (citation omitted). The plaintiff "need not be identically situated to potential class members." *Heagney v. European American Bank,* 122 F.R.D. 125, 127 (E.D.N.Y. 1988); *see Chowdhury v. Duane Reade, Inc.,* No 06-CV-2295, 2007 WL 2873929, at *4 (S.D.N.Y. Oct. 2, 2007) ("defendants' attack on plaintiff's factual showing focuses mostly on irrelevant differences between plaintiff and opt-in plaintiffs. The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated with respect to their allegations that the law has been violated") (internal quotations and citations omitted).

For purposes of conditional certification, it is not necessary that members of the putative collective worked the same schedule and total number of hours or were paid in the same manner, although that factor may lend support in favor certification. *See Hallissey v. America Online, Inc.,* No. 99-CV-3785, 2008 WL 465112, at *2 (S.D.N.Y. May 23, 2016) ("While dates of employment and hours worked are unique to each employee, it does not necessarily create dissimilarity under the FLSA."); *see also Rosario,* 828 F. Supp. 2d at 515 (granting conditional certification where plaintiff received a weekly salary that fluctuated between a fixed range but members of the potential collective received a fixed weekly salary); *see also Mendoza*, 2015 WL 5918580, at *6 (granting conditional certification where members of the collective worked a

different schedule and total number of hours but worked in excess of 40 hours a week and did

not receive overtime compensation).  Here, the operative facts creating a factual nexus between

Plaintiff's situation and that of the employees identified such that they are "similarly situated"

are that they all worked in excess of 40 hours, received either a fixed salary or a salary within a

fixed narrow range irrespective of the tips received or hours worked, and were not properly paid

overtime wages.  The factual variances noted by Defendants do not sever this nexus.

In further opposition to conditional certification, Defendants raise certain factual disputes

and argue that no violation of the FLSA occurred.  *See* Defs.' Opp'n [DE 22] at 7-8.  First,

Defendants claim, without any explanation or legal authority, that the employees' fluctuation in

salary between $3,000 and $3,200 per month demonstrates that Defendants properly paid their

employees overtime.  *See id.*  Second, citing Defendants' hours of operation as attached to Li's

Affidavit, Defendants claim that its employees were likely provided lunch breaks when the

restaurant was closed in the middle of the day.  *See id.* at 7; *see also* Li Aff, Ex. 1-2 [DE 21-1,

DE 21-2].  However, at this preliminary certification stage, "the court does not resolve factual

disputes, decide ultimate issues on the merits or make credibility determinations."  *Lynch,* 491 F.

Supp. 2d at 368 (S.D.N.Y. 2007) (citation omitted).  Indeed, "[t]he focus of this inquiry [ ] is not

on whether there has been an actual violation of law but rather on whether the proposed plaintiffs

are 'similarly situated' " *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54; *see Pal v. Sandal

Wood Bar N Grill, Inc.,* No. 14-CV-0301, 2015 WL 237226, at *1 (S.D.N.Y Jan. 15,

2015) ("Defendants argue that they did not violate any federal or state labor laws, but did in fact

pay full wages.... This argument is inapposite to the instant motion because it goes to the

underlying merit of plaintiffs' claims.").  Rather, the Court is satisfied that the evidence proffered

provides some support, however marginal, to Plaintiff's factual showing that she and the

proposed collective were subject to an unlawful policy or practice which deprived them of overtime compensation.

Accordingly, the Court grants conditional certification as to all current and former cashiers, waitresses/waiters, and sushi chefs employed by the Defendants at any time from September 10, 2015 to the present.

**B.      The Notice of Pendency**

*1.   Scope of Collective Action*

The Court has modified the scope/definition of the collective.  Therefore, the Notice of Pendency shall read as follows.

> Current and former cashiers, waitresses/waiters, and sushi chefs employed at any time from September 10, 2015 to the present by American Yuexianggui of LI LLC d/b/a Lou Joe Restaurant and Xing Mei Chen.

*2.   Notice Period*

Plaintiff requests to send the Notice of Pendency to those potential members of the collective employed by Defendants from September 10, 2015 -- three years preceding the commencement of this action -- to the present.  *See* Notice of Pendency [DE 19-3] at 1; *see also* Publication Order [DE 19-4] at 2.  Defendants do not oppose the proposed notice period.

The statute of limitations under the FLSA is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class."  *Valerio*, 314 F.R.D. at 73–74 (collecting cases).  "Courts in this circuit have generally held that where willfulness is in dispute, a three-year state of limitations applies at the conditional certification stage."  *Alvarez v. IBM Rests., Inc.,* 839 F. Supp. 2d 580, 587–88

(E.D.N.Y. 2012) (citation omitted); *Guzelgurgenli v. Prime Time Specials, Inc.,* No. 11-CV-4549, 2012 WL 3264314, at \*40–41 (E.D.N.Y. Aug. 8, 2012) (internal citations omitted).  Here, Plaintiff repeatedly alleges willfulness in her Amended Complaint.  *See* Am. Compl. [DE 16] ¶¶ 1-2, 20-28.  Although Defendants deny these allegations in their Answer, they do not request that the Court adopt a two-year notice period.  *See* Am. Ans. [DE 17] ¶¶ 2, 20-28.  Since the Amended Complaint contains allegations of willful conduct by Defendants, the Court finds it appropriate to apply a three-year statute of limitations under the FLSA at this stage of the proceedings.  *See Valerio,* 314 F.R.D. at 73.

### 3.  *Equitable Tolling*

Plaintiff requests that the statute of limitations be tolled for 90 days to account for "unnecessary delays."  *See* Pl.'s Mem [DE 20] at 17.  Defendants oppose this request arguing that Plaintiff failed to demonstrate "rare and exceptional circumstances, where plaintiff has been prevented in some extraordinary way from exercising [her] rights" to warrant equitable tolling.  *See* Defs.' Opp'n [DE 22] at 9.  The Second Circuit has advised that "equitable tolling is only appropriate 'in [ ] rare and exceptional circumstance[s],' in which a party is 'prevented in some extraordinary way from exercising his rights.' "  *Fa Ting Wang,* 2015 WL 4603117, at \*13 (quoting *Zerilli–Edelglass v. N.Y.C. Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003)).

However, courts in the Second Circuit "have permitted equitable tolling while the motion for conditional certification is before the court." *Fa Ting Wang*, 2015 WL 4603117, at \*14 (citing *Robles*, 2013 WL 6684954, at \*13); *Castillo v. Perfume Worldwide Inc.,* CV 17-2972, 2018 WL 1581975, at \*17 (E.D.N.Y. Mar. 30, 2018);  *Colon*, 2013 WL 3328223, at \*8; *McGlone*, 867 F. Supp. 2d at 445 (Potential plaintiffs "whose putative class representatives and

their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."))). Given the length of time that has passed since the instant motion was filed, and the diligence of Plaintiff's counsel in pursuing certification, the Court is granting equitable tolling from the date the motion was filed. *See Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 188 (E.D.N.Y. 2015) (citing *Kassman v. KPMG LLP*, 11–CV–3743, 2015 WL 5178400, at *8 (S.D.N.Y. Sept. 4, 2015)).

### *4. Opt-In Period*

Plaintiff requests that opt-in notices be returned within 90-day of the date of an order granting conditional certification. *See* Notice of Pendency [DE 19-3] at 3; *see also* Publication Order [DE 19-4] at 2. In opposition, Defendants argue that the proposed opt-in period "is overly lengthy" and instead request a 45-day opt-in period. *See* Defs.' Opp'n [DE 22] at 10. The Court notes that neither party provides any legal authority for their respective positions.

Although courts have granted opt-in periods of up to 90 days, it has only generally done so "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011) (citations omitted). Here, Plaintiff does not present any exceptional circumstances that might justify such an extended period. Accordingly, the Notice of Pendency shall be modified to provide for a 60-day opt-in period which is a common timeframe for the opt-in period in this Circuit. *See Fa Ting Wang,* 2015 WL 4603117, at *11 ("Courts in the Second Circuit 'routinely restrict the opt-in period to 60 days.'") (citation omitted) (collecting cases); *see also Whitehorn*, 767 F. Supp. 2d at 452 (finding that a 60 day opt-in period is "more consistent with FLSA practice" than a 90 day opt-in period); *see also Park v. FDM Grp. Inc.,* No. 16-CV-01520, 2019 WL 2205715, at *8 (S.D.N.Y. May 22, 2019) (finding that "60 day opt-

in period is more appropriate" than a 90 day opt-in period when plaintiff did not attempt to justify departure from the standard 60 day period applied in this Circuit).

### 5.  *Language of Notice and Consent to Join Forms*

Plaintiff requests that the Notice of Pendency be circulated in both English and Chinese. *See* Pl.'s Mem. [DE 20] at 15.  Defendants do not oppose this request.  "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'"  *Valerio*, 314 F.R.D. at 76 (quoting *Colon v. Major Perry Street Corp.*, No. 12-CV-3788, 2013 WL 3328223, at *8 (S.D.N.Y. 2013)).  Accordingly, the Court authorizes Plaintiff to circulate the Notice in both English and Chinese.

### 6.  *Distribution of the Notice*

Plaintiff proposes to disseminate the approved Notice of Pendency through several means, none of which Defendants oppose.  First, Plaintiff requests to disseminate the Notice by "mail, email, and/or text message, or social media chat."  *See* Pl.'s Mem. [DE 20] at 14.  Courts in the Second Circuit have permitted dissemination of notice by mail, email, and text message "where, as here, the nature of the employer's business facilitated high turnover rate among employees."  *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (citing *Martin v. Sprint/united Mgmt. Co.*, No. 15 CIV. 5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016)); *see also Bhumithanarn*, 2015 WL 4240985, at *5 (authorizing distribution of notice by text message "given the high turnover characteristic of the restaurant industry").  Accordingly, the Court authorizes Plaintiff to disseminate the Notice by mail, email, and text message.  However, the Court declines to permit Plaintiff to disseminate the Notice through social media because Plaintiff has not provided any justification to deviate from the traditional methods generally accepted by courts sitting in this Circuit for disseminating notice to the putative collective members.  *See Qian Xiong Lin v. DJ's Int'l Buffet Inc.,* No. 17-

CV-4994, 2019 WL 5842798, at *5 (E.D.N.Y. Nov. 7, 2019) (prohibiting distribution of notice on social media and websites finding "no reason to deviate from [the typical methods for disseminating notice]" and that such a proposed method "would be overbroad and not likely to materially improve the chances of notice.") (internal quotations omitted).

Second, Plaintiff requests to post the Notice "in a conspicuous location at [Defendants' restaurant]." *See* Pl.'s Mem. [DE 20] at 14; *see also* Proposed Order [DE 19-4] at 2.  Courts in the Second Circuit "regularly approve plaintiffs' requests to post notices and consent forms in 'non-public areas' where potential collective members are likely to congregate, such as clock-in stations or break rooms." *Castillo*, 2018 WL 1581975, at *17; *see also Trinidad*, 962 F. Supp. 2d at 564 (collecting cases).  Courts do so even where they have also directed defendants to produce contact information for potential opt-in plaintiffs.  *See, e.g., id*. at *16-17; *Barbato v. Knightsbridge Properties*, No. 1-CV-7043, 2015 WL 5884134, at *7 (E.D.N.Y. Oct. 8, 2015); *Whitehorn*, 767 F. Supp. 2d at 449.  Finding no reason to deviate from the common practice of courts in this Circuit in requiring notice to be posted in one or more reasonable locations in the common areas at the workplace, the Court grants Plaintiff's request.

Third, Plaintiff requests to disseminate the Notice in "employee's pay envelopes or other method of delivery of their paycheck information."  *See id*.   The Defendants have taken no position on this request.   District courts in this Circuit have taken various positions with respect to disseminating notice via pay envelopes.  *See, e.g., Diaz v. New York Paving Inc.,* 340 F. Supp. 3d 372, 388 (S.D.N.Y. 2018) (in denying the request, the court noted that "[e]nclosure of a notice in a pay envelope, however, is not always ideal because it may suggest either that the notice originates with the employer or that filling it out may actually be required or expected by the employer"); *Garcia*, 102 F. Supp. 3d at 551 (denying request to hang notices in the workplace

and pointing out that counsel "should first discuss the best methods to be used to reach current employees, which might include, for example, the enclosure of the notice with a pay envelope"). *Alvarez v. Schnipper Restaurants LLC*, 16-CV-5779, 2017 WL 6375793, at *6 (S.D.N.Y. Dec. 12, 2017) (instructing counsel to discuss the best methods to be used "to provide current employees of Defendants notice of the lawsuit, including by posting a notice at the four Schnipper's locations or by enclosing notice within a pay envelope"); *Tapia-Castrejon v. Sahara E. Rest. Corp.*, No. 14-CV-8080, 2015 WL 5022654, at *3 (S.D.N.Y. Aug. 18, 2015) (where conditional certification was limited to busboys, plaintiff's application to post the proposed notice at defendants' workplace was denied and court instructed counsel to confer on the best method to be used to reach other busboys, citing him *Garcia* alternative of enclosing notice with a pay envelope). The Court has been unable to locate any Second Circuit decision to date which states or suggests that providing notice through pay envelopes may be an appropriate method of dissemination in certain situations. In the current circumstances, where the collective consists of three different job titles, the Court finds that authorizing dissemination in pay envelopes would place an added burden on the employer to first determine who the affected individuals are and then segregating those pay stubs in order for the notice to be enclosed. In light of these decisions and the fact that Plaintiff has not cited any specific legal authority for the request, the Court denies Plaintiff's request to disseminate the Notice of Pendency in pay envelopes or with paycheck information.

Finally, Plaintiff requests that Defendants be directed to publish the Notice in Chinese and English language newspapers if Defendants fail to furnish the contact information of the collective or more than 20% of the Notices of Pendency is returned undelivered. *See* Publication Order [DE 20] at 2-3. Defendants oppose this request arguing that the issue is not ripe. *See*

Defs.' Opp'n [DE 22] at 10.  The Court agrees and denies Plaintiff's request since it is premature.  *See, e.g., Lijun Geng v. Shu Han Ju Restaurant II Corp.*, No. 18-CV-12220, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 6, 2019) (rejecting identical request on the basis that it was premature); *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17-CV-7066, 2019 WL 699179, at *14 (S.D.N.Y. May 16, 2019) (same).  If Plaintiff has concerns regarding the adequacy of the contact information produced by Defendants or the deliverability of the Notice, Plaintiff may renew this request at an appropriate time.

### 7. *Reminder Notice*

Plaintiff requests authorization to send out a deadline reminder by mail and email to the putative collective.  *See* Pl.'s Mem. [DE 20] at 19.  Since Defendant did not articulate any opposition to this request, the Court authorizes Plaintiff to distribute one reminder notice by mail and email prior to the expiration of the opt-in period to alert potential plaintiffs that the deadline is coming due.  *See, e.g., Sharma v. Burberry Ltd.,* 52 F. Supp. 3d 443, 466 (E.D.N.Y. 2014) (authorizing plaintiffs to circulate reminder forms); *Puglisi,* 998 F.Supp.2d at 102 (same); *Limarvin v. Edo Rest. Corp.,* No. 11-CV-7356, 2013 WL 371571, at *3–4 (S.D.N.Y. Jan. 21, 2013) (same); *see also Chhab v. Darden Rests., Inc.,* No. 11-CV-8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate.").  Thus, Plaintiff may send one reminder notice by mail and email to the putative collective before the opt-in deadline.

### 8. *Production of Identifying Information*

Plaintiff requests that Defendants produce, within fifteen (15) days of this Order, a Microsoft Excel file including the full names, last known mailing addresses (including apartment

number if applicable), last known telephone numbers, last known email addresses, WeChat ID and/or Facebook usernames, and work locations, position and dates of employment of potential plaintiffs. *See* Publication Order [DE 19-4] at 1-2; *see also* Pl.'s Mem. [DE 20] at 12. Defendants oppose the production of "telephone numbers, last known email addresses, WeChat ID and/or Facebook usernames, and work locations, positions and dates of employment" of potential collective members because the "information is irrelevant to the mailing of the Notice of Pendency and are overly burdensome to Defendants." *See* Defs.' Opp'n [DE 22] at 9. Defendants also oppose the timeframe within which Plaintiff seeks this information and request 30 days to furnish the requested information. *See id.* at 9.  In light of the current circumstances which have arisen with regard to the COVID-19 pandemic – circumstances which did not exist when this motion was originally filed – the Court is granting Defendants' request for 30 days to provide the information at issue.

"Many courts have determined that discovery of contact information is appropriate at the notice stage in FLSA collective actions." *Khamsiri v. George & Frank's Japanese Noodle Restaurant Inc.*, No. 12-CV-0265, 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) (citing *Siewmungal v. Nelson Mgmt. Grp. Ltd.,* No. 11-CV-5018, 2012 WL 715973, at *5 (E.D.N.Y. Mar. 3, 2012) (collecting cases)).  It is generally "appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *See Velasquez*, 2014 WL 2048425, at *15 (citing *Puglisi*, 998 F.Supp.2d at 102 ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal quotations and citations omitted); *Rosario,* 828 F.Supp.2d at

522 ("The Court finds the disclosure of potential opt-in plaintiffs' names, last known addresses, telephone numbers, and dates of employment to be appropriate."); *In re Penthouse Executive Club Comp. Litig.*, No. 10-CV-1145, 2010 WL 4340255, at *5–6 (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment to be "essential to identifying potential opt-in plaintiffs")); *see, e.g.*, *Fa Ting Wang*, 2015 WL 4603117, at *14 (collecting cases from the Eastern and Southern Districts of New York).

Accordingly, Defendant shall provide to Plaintiff the names, last known mailing addresses (including apartment number if applicable), telephone numbers, email addresses, and dates of employment of current and former cashiers, waitresses/waiters, and sushi chefs employed at any time from September 10, 2015 to the present by Defendants.  *See Ji Li v. Ichiro Restaurant Inc.,* No. 14-CV-0242, 2015 WL 6828056, at *5 (S.D.N.Y. Nov. 5, 2015) (limiting the production of contact information to those members of the collective action found to be similarly situated).  However, the Court declines to direct Defendants to produce the remaining requested information since doing so would be burdensome on Defendants and would not serve to facilitate the notice process under these circumstances where the Court has limited the methods of dissemination to exclude social media.  *See Salomon v. Adderley Industries, Inc.*, 847 F. Supp. 2d at 566 ("*To facilitate the notice process*, courts routinely order an employer to provide plaintiffs with information regarding potential opt-in plaintiffs") (emphasis added); *Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-729, 2018 WL 6492741, at *9 (E.D.N.Y. Dec. 10, 2018) (denying request for "WeChat ID and/or Facebook usernames" seeing "no reason that notice should be provided in this manner.").  The produced information is to be treated as confidential and to the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality, they are ordered to do so forthwith for this purpose.

Defendants shall produce the requested information within 21 days of the entry of this Order.

*See, e.g., Neris v. R.J.D. Construction, Inc.*, 2019 WL 1458239, at *8 (E.D.N.Y. March 29, 2019) (providing defendants with 21 days to disclose contact information); *Meo v. Lane Bryant, Inc.,* No. 18-CV-6360, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) (same); *Diaz.,* 340 F. Supp. 3d at 388 (same).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED in part and DENIED in part, subject to the limitations discussed in this Memorandum and Order. In sum, the Court certifies the following collective action:

> Current and former cashiers, waitresses/waiters, and sushi chefs employed at any time from September 10, 2015 to the present by American Yuexianggui of LI LLC d/b/a Lou Joe Restaurant and Xing Mei Chen.

The Court further Orders that:

1. Within 30 days of entry of this Order, Defendants shall produce a computer-readable data file including the full names, last known mailing addresses (including apartment number if applicable), telephone numbers, email addresses, and dates of employment of the putative collective;

2. Within 7 days of issuance of this Order, the parties are to meet and confer in good faith, and submit a revised proposed Notice of Pendency and Consent to Join Form that complies with the directives set forth here;

3. Within 30 days of its approval by the Court, Plaintiff or its designated representative shall cause a copy of the Notice of Pendency and Consent to Join form to be disseminated to the putative collective and to be posted at Lou Joe Restaurant located at 255 Willis Avenue, Roslyn Heights, New York.

SO ORDERED:

Dated: Central Islip, New York
       July 2, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge