UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

YVONNE CHIU and PENG ZHU,

Plaintiffs,

-against-

AMERICAN YUEXIANGGUI OF LI LLC d/b/a Lou Joe Restaurant and XING MEI CHEN,

Defendants.

----------------------------------------------------------------X

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

18-CV-5091 (SIL)

YVONNE CHIU and PENG ZHU,

Plaintiffs,

-against-

EAST VILLAGE STAFFING, INC., XING MEI CHEN, YONGJUAN ZHU and ZHAO MIN SONG,

Defendants.

----------------------------------------------------------------X

20-CV-4767 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

The following constitutes the Court's findings of fact and conclusions of law after a bench trial held on October 14 and 15, 2025 in this Fair Labor Standards Act-New York Labor Law wage and hour case. Before reaching the merits, however, several preliminary issues must be addressed. The reason these two cases are treated together is that they arise from Plaintiffs' wage and hour claims stemming from their work at a single restaurant, whose ownership configuration changed during the relevant time period as more fully addressed below. Moreover, the Court recognizes

that the only non-defaulting Defendant who appeared at trial was Xing Mei Chen ("Elizabeth Chen" or "Chen"). And so the Court's decision here applies only to the claims against her. *See* Trial Transcript ("Tr.") at 2:23-3:6, 127:9-10, 129:4-5. Plaintiffs retain their rights to move for a default judgment as to the remaining defaulting Defendants.[1] Finally, the appearing parties make much out of each other referring to information outside the trial record in post-trial briefing. *See* Reply Brief in Support of Plaintiffs' Proposed Findings of Fact & Conclusions of Law, Docket Entry ("DE") [110], at 2-4; Defendant Chen's March 10, 2026 letter, DE [111]. Suffice it to say that these Findings of Fact are based only on the trial evidence.

## I. FINDINGS OF FACT

Plaintiff Yvonne Chiu ("Chiu") was employed at the Lou Joe restaurant in Roslyn Heights from October 19, 2017 to July 19, 2018, when she was discharged. Tr. at 7:12-15, 49:23-50:2. She was hired to be a cashier and her responsibilities included answering the phone, taking orders, taking payments, and occasionally seating customers and waiting tables. *Id.* at 7:25-8:11. Chiu learned about the position from an online job board. *Id.* at 50:16-20.

Plaintiff Peng Zhu ("Plaintiff Zhu") was referred to the restaurant by a friend and was hired as a dishwasher and all-around helper on August 14, 2017. *Id.* at 69:22-71:4, 97:6-10. He was fired on March 15, 2018. *Id.* at 71:5-8, 120:12-14.

Both Plaintiffs were hired by a manager named "Joey," and Defendant Chen was not present. *Id.* at 7:16-19, 51:10-56:7, 70:9-12, 82:18-83:4.

[1] The Court notes the defaulting Defendants Yongjuan Zhu and Zhao Min Song testified at trial despite declining to answer or otherwise appear. *See* Tr. at 2:22-3:6.

Lou Joe was operated by Defendant American Yuexianggui of LI LLC ("AYL"); which was, when the restaurant started operating in 2017, owned by Defendants Elizabeth Chen and Yongjuan Zhu ("Defendant Zhu"). *See id*. at 140:18-142:12. Chen's initial investment was $300,000. *Id*. at 142:8-10. Over the course of the restaurant's existence, she invested a total of $3,000,000, all of which she lost. *Id*. at 148:4-11. At the end of 2018, after the restaurant had been losing money, Chen sold her interest to Defendant Zhu for $20,000. *Id*. at148:17-149:6. There was no evidence offered concerning whether this amount was fair market value.

Defendant East Village Staffing, Inc. ("EVS") was a staffing company owned by Defendant Zhao Min Song ("Song") and supplied staffing to Lou Joe. *Id*. at 104:9-15, 107:2-23. EVS would supply the manager to AYL and that manager would run Lou Joe and hire the staff as EVS employees. *Id*. at107:14-108:22, 111:11-14. AYL was EVS's only client and Chen did not have an ownership interest in EVS. *Id*. at 110:15-22, 130:19-24, 150:12-151:21.

As a matter of practice, in addition to hiring, the EVS managers set the pay rates, provided the paychecks, set the schedules, and directed the work, including Plaintiffs' work, on a daily basis. *Id*. at 59:18-60:19, 146:9-147:12; *accord id*. at 65:20-66:2 (managers directed Chiu to do paperwork during breaks); *see also id*. at 74:19-75:16 (managers provided paychecks), 80:17-19 (Plaintiff Zhu never saw Chen hire or fire anyone), 88:4-14 (managers set hours and days off), 89:4-22 (managers advised of changed responsibilities and pay), 129:18-130:5 (managers handled terms and conditions of employment).

In any event, starting in March 2018, Plaintiff Chiu would fill out checks in English so that Defendant AYL could pay Defendant EVS. *Id*. at 8:18-9:4. She was directed to write the checks by Elizabeth Chen's sister-in-law Lisa. *Id*. at 9:5-14, 22:24-23:2. Chiu did not know who signed the checks, but Plaintiff Zhu said that Defendant Chen had signed his, while Defendant Song testified that he signed them all. *Id*. at 9:19-10:3, 78:4-6, 108:8-9. According to Chiu, the manager, first Joey until December 2017, then his replacement Sato, recorded her time on a computer. *Id*. at 10:19-13:15, 56:12-16. Sato was then replaced by Danny in March 2018. *Id*. at 13:16-14:5. Sometimes Defendant Chen ate at the restaurant as a customer, paying for her meals. *See id*. at 18:14-19:24, 109:14-18.

Plaintiff Chiu's rate of pay was initially set by Joey, and then by Lisa. *Id*. at 20:20-22:22. Chiu testified that the decision to terminate her was made by Defendant Chen, although she was told she was terminated by an individual she identifies as Xiao Pan, Chen was not present, and no details were provided to explain how Chiu came to the conclusion that the ultimate decision was Chen's. *See id*. at 33:1-2, 18-23, 67:9-24.[2] Nevertheless, she also testified that in addition to not hiring her, Defendant Chen did not address her rate of pay with her, sign her paychecks, make schedules or tell employees what their job duties were, or actually hire or fire anyone. *Id*. at 59:9-60:19, 67:19-68:1, 88:15-90:5 (Chen did not tell workers their hours, rates

[2] Much of what Plaintiff Chiu attempted to testify to in order to have liability to attach to Chen was inadmissible hearsay. *See*, *e.g.*, *id*. at 42:13-43:15, 46:22-47:15, 67:9-13. Accordingly, the majority of her testimony lacks credibility.

of pay or what to do day-to-day) 91:3-4 (Chen did not fire Plaintiff Zhu).[3] In fact Chen did not set anyone's rate of pay, or schedule or hire or fire employees or maintain employee records. *Id.* at 145:14-147:4.

## II. CONCLUSIONS OF LAW

Plaintiffs assert various wage and hour claims for unpaid hours, unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL") § 650, *et seq.* and 12 N.Y.C.R.R. § 146, and related state law claims for failure to pay for spread of hours and provide the required wage notices and paystubs. *See*, *e.g.*, Amended Complaint, 18 CV 5091, DE [16] ¶¶ 3-4; Complaint, 20 CV 4767, DE [1] ("Compl.") ¶¶ 1-4. In addition, in their second case Plaintiffs invoke N.Y. Debt. &-Credit. Law § 273, seeking to have Chen's sale of her interest in the restaurant to Defendant Zhu "declared null and void," and an award of resulting damages. *Id.* ¶ 132; *see id.* Prayer for Relief l and m (seeking annulment of the transaction and damages).

The principal question before the Court at trial is whether Defendant Chen was Plaintiffs' employer such that she may be held liable for their wage and hour claims. For the reasons set forth below, the Court concludes that she may not. The Supreme Court has recognized that the FLSA's broad coverage is essential to accomplishing the statute's goals. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296, 105 S. Ct. 1953, 1959 (1985). As a result, the act is applied "liberally"

[3] There was testimony that on one occasion Defendant Chen told Plaintiff Chiu to "provide more help," and Plaintiff Zhu spoke with Defendant Chen only once on New Years to exchange holiday pleasantries. *Id.* at 59:12-15, 91:5-9.

consistent with Congressional intent. *Id.* The definition within the statute is tautological, as an "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The caselaw however directs application of the "economic reality test." *See, e.g.*, *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013); *see also McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 5717010, at *3 (E.D.N.Y. Dec. 12, 2024). The test is applied flexibly on a case-by-case basis requiring an analysis of the totality of the circumstances. *Irizzary*, 722 F.3d at 104. Relevant factors include "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984), *see McLaughlin*, 2024 WL 5717010, at *3 (finding that no one factor is dispositive).[4] The ultimate question is whether the individual at issue has "operation control" over the employment in question. *Irizarry*, 722 F.3d at 106-10. To be clear, "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function[] is insufficient." *Id.* at 109. The control must concern the plaintiff's employment. *Id.* The control "does not require continuous monitoring of employees [rather, it] may be restricted, or

[4] Application of these factors is sometimes referred to as the "Formal Control" test, as distinguished from the "Functional Control" test, which is more intended to focus on whether there is an independent contractor relationship as opposed to an employment relationship, and is not the issue here. *See, e.g.*, *Hernandez v. 2400 Amsterdam Ave. Realty Corp.*, No. 22- CV- 3094 (AT), 2024 WL 1312345 (S.D.N.Y. Mar. 26, 2024) (addressing both tests and setting forth six factors under the Functional Control test, citing *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71–72 (2d Cir. 2003)).

exercised only occasionally. . . ." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Other evidence courts have rejected include authority to sign paychecks without more control or plaintiffs referring to the defendant as "Boss." *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 464 (S.D.N.Y. 2015); *see Chao v. Vidtape, Inc.*, 196 F.Supp.2d 281, 291 (E.D.N.Y. 2002) (being thought of as a "boss…is insufficient to support a definition of employer under the economic realities test…[when the individual] does not hold an integral role in [business] operations, or in setting work policies, schedules or conditions of employment."). The same analysis applies under the FLSA and NYLL. *Salinas*, at n.17 (citing cases).

Applying these factors, the Court concludes that there are no facts which could serve as a basis by which to hold Defendant Chen liable for Plaintiffs' claims. There is no credible evidence that she had the authority to hire or fire, supervised anyone at all, played any part whatsoever in setting work schedules or work conditions, determined rates or methods of pay, or maintained any work records. The only evidence is that she invested a substantial sum of money in the restaurant and ate there to support it. Tr. at 18:14-19:24, 109:14-18, 148:4-11, 149:25-150:7. Ultimately the restaurant failed. *Id.* at 149:12-21.

In reaching this conclusion the Court notes that the limited portion of Plaintiffs' Proposed Findings of Fact, DE [108], ("Pl. Mem."), that address Chen directly contain only two citations to the record purportedly supporting the proposition that she was known as the "Boss," "had the authority to hire employees, and in fact personally made the ultimate decisions to hire the restaurant's managers

and terminate employees' employment when she saw fit." Pl. Mem. at 3 (citing Tr. at 32:2). The transcript does not say anything like this. *See* Tr. at 32. Nor does it say she was regarded as "Boss" at the pages indicated. *See* Pl. Mem. at 3 (citing Tr. at 29). Plaintiffs' remaining allegations about Chen have no record cites. Apparently recognizing this deficiency Plaintiffs also cite the Complaint, though they do not specify which Complaint given that there are two cases before the Court, and two undefined sources—the "Zhu Tr." and "Luo Tr." *See* Pl. Mem. at 4. The Court does not consider sources outside the trial record for the purposes of this decision and declines to guess what these sources are.

Finally, the Court notes, and rejects Plaintiffs' N.Y. Debt. & Cred. Law § 273 cause of action on several grounds. *See* Compl. (Count IX). Initially, whether Defendant Chen's transfer of her interest in AYL was for fair value or something else is beside the point. If Plaintiffs succeeded on this claim, and the sale is set aside, there would still be no recourse against Defendant Chen. Her liability is a question of her operational control over the business enterprise. Because the Court concludes that she lacks the necessary control, she has no liability. This ends the inquiry.

Nevertheless, even if the Court considers the claim on the merits, Plaintiffs have not satisfied their burden of proof. *See Joslin v. Lopez*, 309 A.D.2d 837, 838, 765 N.Y.S.2d 895, 895 (2d Dept. 2003) (the burden is on the party asserting the fraudulent conduct). Section 273 was amended effective 2020. *See* N.Y. Debt. & Cred. Law § 273 (comm. notes). The parties agree that the pre-2020 version of the statute applies. *Compare* Pl. Mem. at 18-19 *with* Defendant Xing Mei Chen's Proposed Findings of

Fact and Conclusions of Law, DE [169], at 14 (quoting the pre-amendment statute). According to this version of section 273:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

N.Y. Debtor-Creditor Law § 273. To establish a cause of action a plaintiff must demonstrate that the conveyance was made without fair consideration and the transferor would be rendered insolvent as a result. *United States v. Watts*, 786 F.3d 152, 164 (2d Cir. 2015).

Plaintiffs submit no evidence as to either element. The fact that Defendant Chen lost a substantial amount of money on her investment in the restaurant does not mean that at the time she transferred her interest that it was worth less than she received. Further, there is no evidence offered that she became insolvent as result of the transfer. Accordingly, this claim fails on the merits.

## III. CONCLUSION

For the foregoing reasons, the claims against Defendant Xing Mei Chen fail and are dismissed, and the Clerk of the Court is directed to enter judgment in her favor. Plaintiffs are directed to submit a letter to the Court by October 18, 2026 explaining how they intend to proceed against the remaining Defendants.

SO ORDERED.

/s/ *Steven I. Locke*
Steven I. Locke, USMJ

Dated: Central Islip, New York
September 18, 2026